## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

| | |
|---|---|
| In re:<br><br>**GREGORY B. MYERS**<br><br>Debtor. | **Case No. 15-26033 WIL**<br>**Chapter 7** |
| **JUDY A. ROBBINS**<br>**UNITED STATES TRUSTEE,**<br><br>**Plaintiff,**<br><br>v.<br><br>**GREGORY B. MYERS,**<br><br>**Defendant.** | **Adversary No.:** |

### COMPLAINT TO DENY DISCHARGE OF DEBTOR

Plaintiff Judy A. Robbins, the United States Trustee for Region 4 ("United States Trustee"), by counsel, hereby files this Complaint, pursuant to Sections 727(a)(2), 727(a)(3), 727(a)(4), 727(a)(5), and 727(a)(6) of the Bankruptcy Code, objecting to the discharge of Gregory B. Myers ("Defendant").   In support of this Complaint, the United States Trustee states as follows:

### Jurisdiction and Venue

1.      The Defendant filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code on November 18, 2015.

2.      On October 18, 2016, the United States Trustee filed a Motion to Convert Case to Chapter 7 or, in the alternative, to Dismiss Case.   After a full evidentiary hearing, on February 15, 2017, this Court converted the case to Chapter 7.

1

3.      Roger Schlossberg ("Chapter 7 Trustee") was appointed and continues to serve as Chapter 7 Trustee.

4.      The last day to file an objection to discharge is May 22, 2017.    This complaint is timely filed.

5.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 727.   This is a core proceeding under 28 U.S.C. § 157(b)(2)(J).   Venue in this Court is proper pursuant to 28 U.S.C. § 1409(a).

6.      The United States Trustee has standing to file this complaint under 11 U.S.C. § 307 and Fed. R. Bankr. P. 4004.

7.      Pursuant to Local Rule 7012-1, the United States Trustee consents to the entry of a final order or judgment by the Bankruptcy Court in this matter.

Parties

8.      The Plaintiff is the United States Trustee for Region 4.

9.      The Defendant is the Chapter 7 Debtor herein.

10.     The Defendant is married to Barbara Ann Kelly ("Kelly")

Facts Common To All Counts

11.     On February 1, 2016, the Debtor appeared with counsel and testified under oath at the continued Meeting of Creditors ("Meeting of Creditors").

12.     The Defendant is a trustee of Serv Trust.

13.     Daniel Ring, CPA, is a trustee of Serv Trust.

14.     The Defendant's mother created Serv Trust.

15.     The Defendant's five children are the beneficiaries of Serv Trust.

16.     Counsel for the Defendant provided a copy of the Serv Trust trust agreement for the United States Trustee's review at the Section 341 meeting of creditors under the condition that the document remain in the Defendant's possession and not be disclosed to third parties.

17.     Serv Trust is a fifty percent (50%) owner of 6789 Goldsboro LLC.

18.     6789 Goldsboro LLC owns a vacant residential property located at 6789 Goldsboro Road, Bethesda, Maryland 20817 as its sole asset ("Property").

19.     Serv Trust formed 6789 Goldsboro LLC in 2013 or 2014 at the time it purchased the Property.

20.     Joan Myers, the Defendant's mother, initially funded Serv Trust with the deposit of One Thousand and 00/100 Dollars ($1,000.00) from a Charles Schwab account.

21.     At the Meeting of Creditors, the Defendant refused to disclose the name of the remaining fifty percent (50%) owner of 6789 Goldsboro LLC claiming that the other owner did not want his name made public ("Undisclosed 50% Owner").

22.     The Defendant testified at the Meeting of Creditors that the Undisclosed 50% Owner paid One Hundred Percent (100%) of the purchase price for the Property.

23.     The Defendant testified that 6789 Goldsboro LLC purchased the Property for One Million Three Hundred Fifty Thousand and 00/100 Dollars ($1,350,000.00) in 2013 or 2014.

24.     The Defendant testified that the Undisclosed 50% Owner of Serv Trust made capital contributions to Serv Trust to allow Serv Trust to make distributions for the benefit of the Debtor's five children.

25.     The Defendant characterized the payments from Serv Trust as distributions to pay the private school education and expenses of his five (5) children.

26.     The Defendant never once mentioned at the Meeting of Creditors that the transfers of funds from Serv Trust to himself and/or Kelly were loans from Serv Trust.

27.     The Defendant testified at the Meeting of Creditors that the money he received from Serv Trust was deposited into his checking account, which was commingled with other funds, and then  was used to "pay the cost of the children."

28.     The Defendant acknowledged at the Meeting of Creditors that he was not permitted to accept any post-petition loans from any other parties without first obtaining permission from this Court.

29.     On June 26, 2014, Kelly, as the borrower, and the Defendant, as the co-owner with Kelly of a parcel of land known as Lot 6, Seaside Subdivision, Santa Rosa Beach, Florida ("Lot 6"), executed a Mortgage in favor of Serv Trust, recorded on June 27, 2014 in the Land Records of Walton County, Florida as Instrument No. 2014661286249 ("Serv Trust Mortgage").

30.     The Serv Trust Mortgage was recorded within two years of the November 18, 2015 filing of the Defendant's Bankruptcy Case.

31.     The Serv Trust Mortgage was created six days after Regions Bank obtained a judgment against the Defendant and Kelly.

32.     On February 27, 2014, Regions Bank obtained a judgment against the Defendant and Kelly in the amount of $582,731.72.

33.     On June 20, 2014, Regions Bank obtained another judgment against the Defendant and Kelly in the amount of $326,879.74.

34.     The Serv Trust Mortgage lists $1,000,000.00 as the maximum amount of the secured indebtedness.

35.     The Serv Trust Mortgage refers to a Credit Agreement as the underlying obligation for the Serv Trust Mortgage.

36.     The Serv Trust Credit Agreement states that the Defendant and Kelly are liable for all prior and future advances by Serv Trust to Kelly and/or Myers up to One Million Dollars.

37.     The Defendant admitted at his Rule 2004 examination that he created the Credit Agreement, which he modeled after a Credit Agreement drafted by Offit Kurman, LLC.

38.     The introductory paragraph of the Serv Trust Mortgage incorrectly states that the Defendant is not responsible for the amounts due under the Credit Agreement.

39.     The Defendant and Kelly are jointly liable for the  money loaned by Serv Trust under the terms of the Credit Agreement.

40.     The Serv Trust Mortgage includes Lot 6 as one of the properties that the Defendant and Kelly pledged as security for their indebtedness under the Credit Agreement.

41.     On Schedule D, Dkt. 19, the Defendant lists Serv Trust as a secured creditor with a lien on Lot 6 in the amount of $151,000.

42.     On October 25, 2017, this Court entered a Consent Order allowing the Defendant to sell Lot 6 free and clear of liens.   The Consent Order provided that the proceeds of the sale were to be held in escrow by counsel for the Defendant, McNamee Hosea, Jernigan, Kim, Greenan, Lynch, P.A. ("McNamee Hosea"), pending further order of the Court.   Dkt. 175.

43.     According to the Report of Sale, Dkt. 217 , McNamee Hosea deposited $1,238,598.91 into its escrow account from the sale of Lot 6.

44.     After the sale of Lot 6, the Defendant testified at his Rule 2004 examination that the amount of debt secured by Serv Trust's lien was approximately $1 million (not $151,000 as

reflected on Schedule D).

45.     On November 21, 2016, the Defendant filed Amended Schedule D, Dkt. 210, to reflect that the amount of Serv Trust's lien was $951,803.96.

46.     On November 19, 2016, Offit Kurman filed a complaint against the Defendant and Serv Trust contesting Serv Trust's lien.   *See* Adversary No.: 16-0541-WIL.

47.     On February 6, 2017, this Court entered an Order of Judgment avoiding Serv Trust's lien as though it never existed and disallowed any scheduled or filed claim of Serv Trust.

<u>COUNT I</u>
**Objection to Discharge 11 U.S.C. § 727(a)(4)(A)**
**(False Oath)**

48.     The allegations contained in paragraphs 1 – 47 are incorporated herein by reference.

49.     The Defendant made false oaths on his Schedules and Statement of Financial Affairs ("SOFA").

50.     The Defendant made false oaths at the Meeting of Creditors.

51.     The Defendant made false oaths at his Rule 2004 examination.

52.     The Defendant's false oaths were made willfully with the intent to defraud.

53.     The Defendant signed the Schedules and SOFA under penalty of perjury.

54.     The Defendant testified at the Meeting of Creditors under the penalty of perjury.

55.     The Defendant testified at the Rule 2004 examination under penalty of perjury.

56.     The Defendant committed a false oath by failing to disclose 6789 Goldsboro, LLC as an unsecured creditor on Schedule D (Dkt. 19).

57.     The Defendant guaranteed the loans that 6789 Goldsboro LLC made to Serv Trust.

58.     6789 Goldsboro LLC made pre-petition loans to Serv Trust.

59.     6789 Goldsboro LLC made post-petition loans to Serv Trust.

60.     Serv Trust used the funds from the loans of 6789 Goldsboro LLC to transfer funds pre-petition to the Defendant and/or Kelly.

61.     Serv Trust used the funds from the loans it received from 6789 Goldsboro LLC to transfer funds post-petition to Kelly.

62.     The Defendant committed a false oath by including Serv Trust as a secured creditor on Schedule D (Dkt. 19).

63.     On Schedule D (Dkt. 19), the Defendant stated the amount of Serv Trust's lien was $151,000.

64.     The Defendant committed a false oath by including Serv Trust on Schedule D.

65.     The Defendant committed a false oath by stating on Schedule D that the amount of Serv Trust's claim was $151,000.

66.     After the Defendant sold Lot 6, the Defendant filed an Amended Schedule D (Dkt. 210), which increased the amount owed to Serv Trust to $951.803.96.

67.     The Defendant committed a false oath on Amended Schedule D by including Serv Trust.

68.     The Defendant committed a false oath on Amended Schedule D by stating that the amount of Serv Trust's claim was $981,803.96.

69.     In discussing Serv Trust's lien on Schedule D (Dkt. 19), the Defendant stated that "Debtor is not liable on the Note, but pledged his interest under a Deed of Trust."

70.     The Defendant committed a false oath by stating on Schedule D (Dkt. 19) that he

signed a "Note" to evidence a loan with Serv Trust.   There is no "Note."   There is, however, a Credit Agreement.

71.     The Defendant is liable on the Credit Agreement.

72.     The Defendant made a false oath by stating that he was not liable on the Note.

73.     The Defendant committed a false oath by stating on Schedule D (Dkt. 19) that he signed a Deed of Trust.   The Defendant did not sign a "Deed of Trust."   The Debtor signed a Mortgage.

74.     Prior to the bankruptcy, the Defendant was receiving funds from Serv Trust.

75.     At the Meeting of Creditors, the Defendant stated that the money that he and Kelly received from Serv Trust were distributions for the benefit of their children, who are the beneficiaries of Serv Trust.

76.     At his 2004 examination, the Debtor testified that the pre-petition funds that he received from Serv Trust were loans, not distributions.

77.     The Debtor committed a false oath as to the classification of the transfers of money from Serv Trust to himself at the Meeting of Creditors, Rule 2004 examination, and/or both.

78.     The Defendant committed a false oath at his Rule 2004 examination by testifying that the Serv Trust lien was One Million Dollars.

79.     The Defendant committed a false oath on Amended Schedule D (Dkt. 210) by including Serv Trust as a secured creditor.

80.     The Defendant committed a false oath on Amended Schedule D (Dkt. 210) by stating that the value of Serv Trust's claim was $951,803.96.

81.     On Schedule I (Dkt 19), the Defendant does not include the Serv Trust

distributions.

82.     On Amended Schedule I (Dkt 42), the Defendant includes as income for Kelly distributions from Serv Trust in the amount of $15,000 per month.

83.     On Amended Schedule I (Dkt 42), the Defendant states as follows: "The income to the Debtor's wife is from a Trust.   Income to Debtor's wife is in the sole discretion of the Trustees of the Trust.   The income from the Trust is used primarily for educational expenses of the Debtor's children."

84.     At his Rule 2004 examination, the Defendant claimed to have never read the statement on Amended Schedule I (Dkt. 42) as quoted in Paragraph 83.   The Defendant claimed that the statement on Schedule I was incorrect.

85.     On the Second Amended Schedule I (Dkt. 210), the Debtor states that neither he nor Kelly earn any income.

86.     The Defendant committed a false oath on either Schedule I by not including the distributions from Serv Trust, or on Amended Schedule I by including the distribution from Serv Trust.

87.     The Defendant committed a false oath at his Rule 2004 examination by claiming he never read the statement on Amended Schedule I as quoted in Paragraph 83.

88.     The Defendant committed a false oath by testifying at his Rule 2004 examination that the monies given to him pre-petition by Serv Trust were loans.

89.     Post-petition, Kelly continued to receive money from Serv Trust.

90.     The Defendant committed a false oath by testifying at his Rule 2004 examination that the money that Kelly received from Serv Trust post-petition was loans from Serv Trust.

91.     The Defendant committed a false oath by testifying that the other 50% of 6789 Goldsboro Road did not want his/its name to be disclosed in the Defendant's bankruptcy case

## COUNT II
### Objection to Discharge 11 U.S.C. § 727(a)(4)(A)
### (Presented or Used a False Claim)

92.     The allegations contained in paragraphs 1 – 91 are incorporated herein by reference.

93.     The document attached as Exhibit 1was created by the Defendant .

94.     The Defendant gave Exhibit 1 to the United States Trustee.

95.     The Defendant represented that on Exhibit 1 is a list of the money that the Defendant and/or Kelly received as loans from Serv Trust.

96.     This list includes $212,300 in payments made to Kelly post-petition.

97.     Under the Credit Agreement, the Defendant was jointly liable for all loans up to $1 million from Serv Trust to Kelly.

98.     The Defendant was aware that Serv Trust was continuing to loan money to Kelly post-petition.

99.     Post-petition, the Defendant did not take any action against Serv Trust or Kelly to stop Serv Trust from continuing to loan money to Kelly.

100.     On Amended Schedule D (Dkt. 210), the Defendant included in the amount of Serv Trust's claim the post-petition loans to Kelly.

101.     The Defendant also included in the amount of Serv Trust's loans on Amended Schedule D (Dkt. 2010) distributions made from Serv Trust to the Defendant and/or Kelly more than three (3) years prior to the formation of the Mortgage.

10

102.    According to Exhibit1, the Defendant was including in the amount of Serv Trust's loans on Amended Schedule D $139,000 in payments made in 2011 (more than three years prior to the creation of Mortgage), $244,500 in payments made in 2013 (approximately two years prior to the creation of the Mortgage), and $200,000 in payments in 2014 (within 2-4 months before the creation of the Mortgage).

103.    The total amount of distributions made by Serv Trust to the Defendant and/or Kelly after the signing of the Credit Agreement and prior to the bankruptcy totaled $307,100.

104.    Prior to the sale of Lot 6, the Defendant claimed that the monies that he and/or Kelly received from Serv Trust were distributions.

105.    After the sale of Lot 6, the Defendant claimed that the monies that he and/or Kelly received from Serv Trust were loans.

106.    On February 6, 2017, this Court entered an Order of Judgment avoiding Serv Trust's lien as though it never existed and disallowed any scheduled or filed claim of Serv Trust.

107.    By including Serv Trust on Schedule D (Dkt. 19), the Defendant presented and/or used a false claim.

108.    By increasing the amount of Serv Trust's claim on Amended Schedule D (Dkt. 210), the Defendant presented and/or used a false claim.

109.    By testifying at the Rule 2004 examination that Serv Trust's lien was one million dollars, the Defendant presented and/or used a false claim.

110.    By testifying that Serv Trust loaned the Defendant and Kelly money, the Defendant presented and/or used a false claim.

111.    The Defendant also presented and/or used a false claim by causing Serv Trust to

file a motion seeking release of the surplus funds being held in escrow by McNamee Hosea from the sale of Lot 6. *See* Dkt. 222.

112. After valid objections were raised to Serv Trust's motion seeking release of the surplus funds, the Debtor caused Serv Trust to withdraw its motion. Dkt. 289.

113. In addition, on February 6, 2017, this Court entered an Order of Judgment avoiding Serv Trust's lien as though it never existed and disallowed any scheduled or filed claim of Serv Trust.

## COUNT III
### Objection to Discharge 11 U.S.C. 7 § 27(a)(3)
### (Failure to Keep or Preserve Recorded Information)

114. The allegations contained in paragraphs 1 – 113 are incorporated herein by reference.

115. The Defendant has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the Defendant's financial condition or business transactions might be ascertained.

116. For years prior to filing this bankruptcy case, the Debtor received $14,500 per month from Guardian Life Insurance Company of America ("Guardian").

117. For the three years prior to filing this bankruptcy case, the Debtor received $522,000 from Guardian.

118. During this same time period, the Defendant and/or Kelly received more than $800,000 from Serv Trust.

119. The Defendant has failed to provide any documents to explain the dissipation of the more than $1.3 million that he and Kelly received from Guardian and Serv Trust during the three

12

years prior to filing bankruptcy.

120.     The Defendant also received $240,875 from his mother Joan Myers.   At this time,

the United States Trustee is not certain as to when the Defendant received those funds.   If the

Defendant received the $240,875 from his mother within three years of the Petition Date, the

Defendant will need to provide documents to explain the dissipation of those monies.

121.     The Defendant and Kelly received $45,000 from Michael and Susan Myers.

Michael Myers is the Defendant's brother.   At this time, the United States Trustee is not certain as

to when the Defendant and Kelly received those funds.   If the Defendant and Kelly received the

$45,000 within three years of the Petition Date, the Defendant will need to provide documents to

explain the dissipation of those monies.

122.     In addition, at the hearing on May 17, 2017, the Defendant informed the Court that

he may have deleted emails received and sent during the pendency of his bankruptcy case.   If that

is true, then the Defendant may have failed to keep or preserve recorded information from which

the Defendant's financial condition or business transactions might be ascertained.

**COUNT IV**
**Objection to Discharge 11 U.S.C. § 727(a)(5)**
**(Failure to Adequately Explain the Loss of**
**Assets or Deficiency of Assets to Meet Liabilities)**

123.     The allegations contained in paragraphs 1 - 122 are incorporated herein by

reference.

124.     The Defendant has failed to explain satisfactorily, before determination of denial of

discharge under this paragraph, any loss of assets or deficiency of assets to meet the Defendant's

liabilities.

125.     The Defendant has failed to explain satisfactorily the dissipation of the more than

13

$1.3 million that he and Kelly received from Guardian and Serv Trust within the three years prior to the bankruptcy filing.

126.     If the Defendant received the $240,875 from his mother within three years of the Petition Date, then the Defendant has failed to explain satisfactorily the dissipation of those funds.

127.     If the Defendant and Kelly received the $45,000 from Michael and Susan Myers within three years of the Petition Date, then the Defendant has failed to explain satisfactorily the dissipation of those funds.

**COUNT V**
**Objection to Discharge 11 U.S.C. §727(a)(2)**
**(Transfer of Assets with Intent to Hinder**
**Delay or Defraud Creditors)**

128.     The allegations contained in paragraphs 1 - 127 are incorporated herein by reference.

129.     The Defendant, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the debtor within one year before the date of the filing of the petition.

130.     The Defendant, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of estate after the date of the filing of the petition.

131.     The Defendant, with the intent to hinder, delay or defraud creditors of the estate, transferred to Serv Trust additional equity in the net proceeds of Lot 6 by increasing the amount of Serv Trust's claim as a result of post-petition transfers of funds to Kelly.

14

132.    The Defendant, with the intent to hinder, delay or defraud creditors, transferred to Serv Trust additional equity in Lot 6 by increasing the amount of Serv Trust's claim as a result of pre-petition transfers of funds to the Defendant and/or Kelly.

133.    The Defendant, with the intent to hinder, delay or defraud creditors, transferred or permitted to be transferred his assets to or for the benefit of his children.

134.    The Defendant, with the intent to hinder, delay or defraud creditors, transferred or permitted to be transferred estate assets to or for the benefit of his children.

135.    Post-petition, Kelly retained various attorneys to represent her.

136.    On information and belief, the Defendant, with the intent to hinder, delay or defraud creditors, transferred or permitted to be transferred estate assets to attorneys that represent Kelly.

137.    On information and belief, the Defendant, with the intent to hinder, delay or defraud creditors, transferred or permitted to be transferred estate assets to attorneys that represent his interests.

138.    On information and belief, the Defendant, with the intent to hinder, delay or defraud creditors, increased his administrative expenses by transferring or permitting the transfer of estate assets to benefit Kelly.

139.    The Defendant, with the intent to hinder, delay or defraud creditors, harmed his sole creditors by transferring or permitting the transfer of estate assets to pay his and Kelly's joint creditors.

**COUNT V**
**Objection to Discharge 11 U.S.C. §727(a)(6)**

**(Refusal to Obey an Order of the Court)**

140.     The allegations contained in paragraphs 1 – 139 are incorporated herein by reference.

141.     On June 17, 2016, this Court entered a Consent Order Establishing Deadline to File Chapter 11 Plan, Timely File Monthly Operating Reports, and Remit Quarterly Fees ("Consent Order").   See Dkt. 83.

142.     The Consent Order ordered that "the Debtor shall timely file his monthly operating reports and timely remit quarterly payments to the United States Trustee."

143.     On October 18, 2016, the United States Trustee filed a Motion to Convert Case to Chapter 7 or, in the Alternative, to Dismiss Case (Dkt. 167) ("Motion to Convert").

144.     The United States Trustee alleged in the Motion to Convert that there was cause to dismiss or convert the case because the Defendant failed to comply with an order of the Court. More specifically, the United States Trustee alleged that there was cause to dismiss or convert the case because the Defendant failed to comply with the terms of the Consent Order.

145.     On February 15, 2017, the Court conducted a full evidentiary hearing on the Motion to Convert.

146.     At the conclusion of the hearing, the Court gave an oral opinion setting forth the reasons that the Court was granting the Motion to Convert.

147.     The Court stated that one of the reasons that the Court was granting the Motion to Convert was because the Defendant failed to comply with the Consent Order.

148.     The Court found that the Defendant failed to timely file his monthly operating

reports after the entry of the Consent Order

149.     The Defendant was delinquent in filing his monthly operating reports for June, July, August and September 2016.

150.     The Defendant never filed a monthly operating report for October, November or December 2016.

151.     The Defendant never filed a monthly operating report for January 2017.

152.     The Consent Order further ordered that "the Debtor shall file a Disclosure Statement that is reasonably susceptible to approval and a Chapter 11 Plan that is reasonably susceptible to confirmation by September 30, 2016."

153.     The Court stated during its oral opinion at the conclusion of the hearing on the Motion to Convert that one of the reasons that the Court was granting the Motion to Convert was because the Defendant failed to file a Disclosure Statement that was reasonably susceptible to approval and a Chapter 11 Plan that was reasonably susceptible to confirmation.

154.     The Defendant failed to file a Disclosure Statement or Plan by September 30, 2016, or by any agreed upon extension.

155.     The Disclosure Statement (Dkt. 147), that the Defendant did file, albeit late, on October 5, 2016, was not reasonably susceptible to approval and the Plan (Dkt 148) was not reasonably susceptible to confirmation.

156.     The United States Trustee filed an Objection to the Disclosure Statement on October 27, 2017.   *See* Dkt. 177.

157.     Realizing that his Plan and Disclosure Statement were not reasonably susceptible to

confirmation and approval, the Defendant filed an Amended Plan and an Amended Disclosure

Statement on November 22, 2016.  *See* Dkt 213 and 216.

158.    The Debtor filed the Amended Plan and Amended Disclosure Statement on the

morning of the hearing on the Motion to Convert.

159.    The Amended Disclosure Statement was also not reasonably susceptible to

approval.

160.    The Amended Plan was not reasonably susceptible to confirmation.

161.    The Amended Plan and Amended Disclosure Statement stated that the unsecured

creditors would be paid 100% of their claims from the funds being held in escrow by Defendant's

counsel from the sale of Lot 6.

162.    Believing that the Amended Plan and Amended Disclosure Statement were filed in

good faith, the United States Trustee agreed to the Defendant's request to continue the hearing on

the Motion to Convert.   The parties agreed and the Court ordered that the hearing on the Motion to

Convert be continued until the date to be set for the confirmation hearing of the Amended Plan.

163.    After the Court granted the Defendant's request to continue the hearing on the

Motion to Convert, the United States Trustee learned that the Defendant did not include 6789

Goldsboro LLC as an unsecured creditor on Schedule F.

164.    6789 Goldsboro, LLC has an unsecured claim in the amount of $476,395.83.

165.    After the United States Trustee informed the Defendant of this false oath, the

Defendant filed a Second Amended Plan and Second Amended Disclosure Statement on February

1, 2017.

166.    The Second Amended Plan decreases the payment to unsecured creditors from

100% to what is known as a pot plan.   Under the Second Amended Plan, the unsecured creditors had to share pro rata the sum of $62,919.65.

167.    The Defendant also testified on February 1, 2017, that the Amended Plan and Amended Disclosure Statement were not reasonably susceptible to confirmation or approval because he failed to request permission from Kelly to use the Escrow Funds, which he now claims are owned by Kelly and him as tenants by the entireties.

WHEREFORE, the United States Trustee respectfully requests that the Defendant's discharge be denied and for such other and further relief as the nature of her cause may require.

Respectfully submitted,

Date:   May 18, 2017                **JUDY A. ROBBINS**
United States Trustee for Region 4

By Counsel

*/s/ Lynn A. Kohen*
Lynn A. Kohen, Bar No. 10025
Leander D. Barnhill, Bar No. 16871
Trial Attorneys
6305 Ivy Lane, Suite 600
Greenbelt, Maryland 20770
(301) 344-6216
Fax: (301) 344-8431
E-mail: lynn.a.kohen@usdoj.gov